Mr. Justice Lipscomb
delivered the opinion of the court.
This case was before us at the last term, on a judgment rendered in the court below in favor of the present appellant on a demurrer.[2] The judgment was reversed and the cause was remanded, with leave to amend. After the cause was remanded the plaintiff filed an amended petition, in which he-has changed or dropped a part of the remedy sought in the original petition, in that he sought to establish a specific lien on certain negro slaves, which lien had been supposed to have-been acquired by certain deeds and proceedings of the court in the state of Mississippi; and further, to establish the indebtedness of Turner to the plaintiff. The demurrer that was brought under the revision of this court was put in on the supposition that the suit was based on the judgment of a court in the state of Mississippi. This court reversed the judgment on the ground that it was not brought on the judgment, but that the petition disclosed a sufficient cause of action, if the matters and things in relation to the judgment were-stricben out.
In the amended petition the plaintiff has abandoned the- *368 claim of specific lien, and seeks only to establish the liability of Turner for the debt. In order to do this he charges a breach of a certain agreement or contract made between the parties on the 10 th day of July, 1841, and made a part of the petition. And in his second count in his petition, he charges him on a letter, written by Turner to the plaintiff on the 8th of March, 1844.
The agreement set out in the first part of the petition is the same that was made a part of the petition ir its original form» As the main question for our consideration is, whether a breach of this contract furnishes a legal cause of action, we-will for the sake of the more easy reference state here the substance of its contents. It commences, that whereas, ¥m. M. Lambeth has sued Wm. E. Jones in the court of chancery of the state of Mississippi, and whereas, the property levied on has been restored to S. S. Turner, “ now executor of the said Jones, since deceased, who personally binds himself faithfully to discharge the trust of possession conjointly with B. Sellers, now the overseer on the plantation as agent of said Wm, M. Lambeth, until the debt amounting to ten thousand four hundred and ninety dollars and thirty-five cents be finally settled together with the legal interest, costs, etc. And. whereas, the said Jones did claim during his lifetime certain offsets against said Lambeth’s claim, which are yet in controversy, and the parties, viz.: the executor of Jones, the said'S.S. Turner, and the said Lambeth being anxious to compromise said suit, it is therefore agreed that said property attached in said-suit shall remain in po^ession (and not to be removed) of said executor and B. Sellers, the crops to be shipped to-said Lambeth and applied to the said debt, and a decree rendered by the chancellor of said state in vacation, for the full, amount of the said claim and for costs of suit. But-it is understood that no execution shall issue, thereon, provided th& crop be faithfully shipped sooner than April, 1843. And presuming that two crops will pay the debt, it is further -understood that said offsets, when ascertained by the parties, either by suit or by arbitration, shall be credited against so much of the said decree as may remain unpaid after deducting said- *369 crops. It being expressly understood that neither of said parties by this agreement intends to relinquish or be stopped from any claim or claims mutually existing between them, but that it is intended only to shut out inquiry or evidence which may interfere with said suit in chancery; and further, •obtain a final decree thereon for the full amount claimed. And in order to avoid delay and costs.” In the opinion of the court at its last term, this contract with other matters embraced in the plaintiff’s petition was incidentally noticed as one, the breach of which in violating the trust, afforded sufficient ground of action of itself, without resorting to the proceedings in the court of chancery in Mississippi, in the rendition of a decree in vacation. On a review of our opinion we have found no reason to come to a different conclusion. The appellant’s counsel urges that there is no consideration shown to support the contract, apart from the principle which we believe to be a sound one, that a valid consideration is implied; the debt from Jones to Lambeth and the seizure of tthe property under the attachment issued by the chancellor, and its being restored to the possession of Turner, abundantly sustains the validity of the consideration. It has been further contended that the contract is void, from vices apparent on its face; that it shows it was entered into fraudulently; and the latter cause is relied on as disclosing this fraudulent intent. “It being expressly widerstood that neither of [369] said parties by this agreement intend to relinquish or be stopped from any claim or claims, mutually existing between them,, but that it is intended only to shut out inquiry or evidence which may interfere with said suit in chancery,” etc.
It is believed to be a rule of universal application in both courts of equity and law, that fraud must not be presumed; that until it is proven, the presumption is in favor of the fairness of the transaction. Can, then, the clause referred to in the contract bear a reasonable interpretation, consistent with fairness and good faith, for it must be admitted, if it stood •alone and unconnected with any other of the stipulations contained in the instrument, it might .justly be interpreted to mean some secret and fraudulent intent concealed under the *370 .-surface, and throw suspicion on the whole contract, but when taken altogether, it is explained and relieved from all suspicion. It will be seen that the object was to secure a debt about which there was no controversy, and that there were other matters not adjusted in which a balance was claimed against Lambeth, and these matters were not embraced in the contract, further than to provide, if such balance should be found, it was to be applied to the payment of the debt secured by the ■contract,' in the event of its not being extinguished by the appropriation, to its discharge of the proceeds of the cotton crops. It is nothing but a fair interpretation of the last clause in the contract, that it was to shut out inquiry and evidence of those unadjusted matters on which such balance was claimed, lest it-might embarrass and obstruct the object of the contract, wlpch was the securing of the debt specified. With this construction all presumption of fraudulent intent is repelled. It has been said that this contract carries intrinsic evidence that it is void, because it stipulates for a decree of the chancellor, being rendered in vacation, when by law the chancellor had no such authority. If this objection were material, which is not admitted, it would be unavailable in this instance, because we cannot judicially know the powers of the chancellor in Mississippi until proven, and a foreign judicatory is never supposed to exceed its powers, until it is proven. In the absence of proof we have no right to know that the decree stipulated to be procured would be in violation of or transcending the legitimate power of the chancellor of Mississippi. But we believe that in this case it might be safely admitted that such decree could not have been legally obtained, and that such concession would not render the contract, as to other matters, less obligatory. It will be remembered that this decree was not the main or principal object of the contract; that it was only auxiliary. The object was to secure the payment of the debt by keeping the slaves together on the plantation, and applying to that end the proceeds of their labor. If the stipulation for the procurement of the decree was impossible to be performed, it was only the loss of a security intended for the advantage of Lambeth, and could not affect the obligation *371 to perform the others; and at most it'only relieved Turner from the performance of that particular stipulation.
Besides the general demurrer, there were several exceptions to the petition, but none of them we believe were well taken. The breaches are well assigned. The plaintiff avers in his petition that the money, nor any part of it, had been paid. It was not necessary that he should have averred that the crops had not been sent and applied to the payment. This fact is shown by the averment that the debt, and no part of it, had been paid. He avers, too, that the defendant had removed the property from the state of Mississippi to Bed River county,, which of itself was an assignment of a breach sufficient to sus’.tain the action.
The case was put to the jury on the other pleas and a verdict was found for the plaintiff. There was no motion for a new trial, consequently we are not called upon to decide whether the evidence supported the finding of the jury or not. And it only remains for us to consider the points presented by the different exceptions to the charge of the judge.
The first was to permitting the plaintiff below to-amend his petition, and ruling the defendant to answer, without service of the copy of the amended petition. The terms on which an amendment shall be made are at the discretion of the court, but that discretion should always be exercised in a way as not to operate as a surprise on tbe other party; and in this case, if the amended petition was, from its amended features, calculated to have that effect, the court would have protected him by granting a continuance. It appears that, in fact, the cause was continued, and the defendant could not complain that he was hurried into the trial without time to make his defense. In this case the mandate of this court instructed the court below to allow an amendment. The petition, as it was originally filed, was thought by this court when the case was before us at the last term, to be unnecessarily prolix, and to embrace a great deal that might well have been omitted. Hence, the instructions to the court below to permit an amendment for the purpose of dropping all unnecessary matter. The petition, as amended, embraced no new matter not contained *372 'in the old one, although if it had, its only effect would have been to give the defendant a ground for a continuance, to enable him to make his defense.
The second exception is to the court’s permitting a new petition to be substituted for the amended one, it having been lost, ■and the addition of a new count. It appears that after the amended petition had been filed, it was lost or mislaid, so that 'it could not be found at the term»when it was next called. The court, after receiving proof by affidavit of the loss of the amended petition, granted permission to the plaintiff to file another one, and, that the defendant have leave to answer or not, as he might choose. It does not appear that the defendants wished time to answer anew, but that they relied on the answers already filed. Upon the addition of a new count, if it was material, and calculated from its character to surprise the defendant, his remedy was to ask a continuance. It was certainly competent for the court to have allowed the new and additional count. The defendant did not pretend to be surprised, or to want further time; the objection on his part seems to have been to the authority of the court to permit the substituted petition, with the additional count. This the court clearly had a right to do. We believe that, in this instance, it would have been competent for the court to have permitted an amendment to be made by filing a new petition in the place of the lost one, particularly when there was sufficient before the court to amend by, independent of any statutory provision on the subject, and it surely could not be doubted that the plaintiff could have resorted to the original petition, to which the one lost was an amendment, and the substitute would have been an amendment to that original.
■The act regulating judicial proceedings, of 1846, p. 371, sec. 34, enacts “ that the pleadings in all suits may be amended under the direction of the court upon such terms as it may prescribe, at any time before' the parties announce themselves ready for trial, and not thereafter; but no amendment shall prevent a suit from being tried at the same time it may be made, unless the court be satisfied that such amendment operate as a surprise to the opposite party.” The section just *373 cited is believed to be broad enough in its terms to embracé-both the exceptions we have considered.
Besides the exceptions we have noticed, the defendant excepted to the charge of the judge to the jury. It seems from the bill of exceptions that “ both parties permitted the j ury to retire without a charge from the court, and the jury not. agreeing, the court proceeded to charge the jury on the solicitations of the plaintiff’s attorney, to which course the defendant excepted. The court charged the jury as a fact within the judicial knowledge of the court, although none of the-papers in the original suit were before the jury, that this suit was but an amendment of the old suit, and that the original petition was filed on the 23d of December,. 1844. The court charged the jury that the contract sued upon could be sued upon here, although it could not be sued -upon in the state of Mississippi, where the same was made, it having there passed into a decree. The court charged the jury that the best evidence of the jurisdiction of the chancery court of the state of Mississippi on the contract was the exercise of jurisdiction by that court in the case as shown by the introduction of the record of that court by the defendant.”
It is believed tobe the common practice, where the jury cannot agree, for the court to charge them on their return. Their having gone out without a charge, and not agreeing, placed them before the court, on their return, precisely as if they had never retired. Had the jury agreed on their verdict, and come before the judge to return the same, it would seem objectionable then to give a charge, but this, though an irregularity, we are by no means prepared to say, would be sufficient to reverse the judgment. Such a course is not unfrequent, and under some circumstances it would not perhaps be wrong to charge a second time, when any of them should ask a charge on a particular point, before they would assent to the verdict being recorded. That the judge charged the jury that he could judicially know that the suit was commenced on a particular day, is not objectionable; the whole record is before him and requires no verification, and if that gave the information, there was no error in his informing the jury that he *374 knew judicially the day on which it was commenced. In the statement of facts, it seems that the judge ascertained from the court docket the time when the suit was commenced. In 1 the balance of his charge, the judge followed the decision of this court when this cause was before us at the last term, that' suit could be sustained on the contract sued on, although it could not in the state of Mississippi, where it had merged into-a decree of the court. That a suit can be brought on the-original consideration in our courts, where there had been a. judgment and decree of a foreign court, is expressly provided for by the statute of the republic that forbids a suit on a foreign judgment; this is certainly the effect of the-statute in all cases where the suit had been commenced, as this-was, before the annexation of the republic to the United States. Perhaps it would not be the case when suit has been, instituted since.
There is nothing more in the charge of the judge that is-deemed material to be noticed. We see no error in the judgment, and it must therefore be affirmed.

 See 1 Texas Reports, 864.