**Harold B. MILLS, Appellant,**

v.

**Philip A. WITHERS, Appellee.**

**No. 15927.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

June 22, 1972.

**340**

William A. Petersen, Jr., Houston, Burford, Ryburn & Ford, Logan Ford and Spencer C. Relyea, III, Dallas, for appellant.

Malone, Murphy & Fenley and Paul C. Murphy, III, Houston, for appellee.

COLEMAN, Justice.

This is a stockholder's derivative action brought by appellee for the benefit of Builders Equity Corporation, a Texas corporation. After a jury trial judgment was entered against appellant in the amount of $1,859.24 as damages plus $2500.00 for attorney's fees. A motion for new trial was overruled after a remittitur in the sum of $1,150.00 was filed.

Plaintiff's Second Amended Petition alleged that appellant as an officer, director and/or agent and stockholder of the corporation was the principal co-signer of corporation checks and that he individually or in concert with other directors, officers or agents of the corporation fraudulently and negligently mismanaged and misappropriated the assets of the corporation by paying with corporate funds obligations for which appellant was personally and/or jointly and severally liable, and by paying with corporate funds obligations for which S. M. Roycroft and/or Builders' Contract Corporation were liable. The petition alleged in the alternative that the corporation existed only "as a shadow of the personality of Harold B. Mills" and that the court should ignore the "corporate framework of Builders' Equity Corporation and find the Defendant, Harold B. Mills, individually liable to Plaintiff for Plaintiff's damages in the sum of $3,000.00," plus interest, exemplary damages and reasonable attorney's fees.

The jury found:

1) that corporate funds were disbursed between June 9, 1967 and November 1, 1967, in payment of obligations owing by Harold B. Mills;

2) that the sum of $1,125.00 was so paid;

3) that corporate funds "were used to make payments to Stanley Development Company on property in which Builders Contract Corporation had a proprietary interest:"

4) that Harold B. Mills had personal knowledge of that fact;

5) that $734.24 in corporate funds were so used;

9) that $2,500.00 would fairly and reasonably compensate Philip Withers for reasonable and necessary attorney's fees incurred in connection with the filing, preparation, and trial of this cause of action in the trial court.

After entry of judgment and the filing of appellant's motion for new trial, the trial court entered an order finding that the motion "is not well taken except as to the inclusion of $1,125.00 for money found by the jury to have been paid out of corporate funds for the individual benefit of Mr. Harold B. Mills." Appellee was directed to file a remittitur in that amount as a condition to the court's overruling the motion. Appellee filed the remittitur, stating therein that the court had found that there was no evidence to support the jury's answer to Special Issue No. 2.

Appellant contends that the trial court erred in failing to disregard the jury's answers to Issues 3, 4, 5 and 6 and in failing to enter judgment for appellant because the findings alone or in combination with other issues do not constitute ultimate issues of fact upon which a judgment can be rendered; that the court erred in entering the judgment on these issues in the absence of evidence that the appellant's conduct in relation to the payments found by the jury was such as to constitute fraud or negligence; and that the court erred in entering the judgment in the absence of a jury finding that Mills' conduct with respect to the payments found by the jury constituted either fraud or negligence. Other points of error asserted that the trial court erred in entering a judgment for Withers for attorney's fees.

Appellee has assigned cross-points complaining of the action of the trial court in requiring the remittitur and in failing to submit requested special issues on exemplary damages.

Harold B. Mills at all times material to this case was a member of a small law firm with offices in the Bettes Building. S. M. Roycroft was an accountant, who performed accounting services for the law firm on a contract basis. For a time he officed with the firm. In 1967 his office was Room 619 in the Bettes Building. The building records show this office in the name "Harold Mills—Houston-Gulf Corpo-

ration," and that the bill for the rent was rendered to Harold Mills. Gerald Beckman was a lawyer employed by the law firm on a monthly salary plus a small percentage of the net profit. M. A. Baker is a court reporter, who had an office on the sixth floor of the Bettes Building. R. M. Hay was a friend of Roycroft and Mills.

On April 20, 1967, a corporate charter was granted for Builders Equity Corporation. Gerald Beckman, M. A. Baker, and R. M. Hay were the incorporators and initial directors. The evidence indicates that M. A. Baker, Jr. was president, although there are no records of stockholders or directors meetings. The stock transfer book indicates that S. M. Roycroft was issued 5,800 shares of stock; Harold B. Mills 800 shares; M. A. Baker, Jr., 800 shares; Gerald H. Beckman 200 shares; Roy M. Hay 200 shares; and Philip A. Withers 3,000 shares.

The business of the corporation was conducted by Roycroft prior to his death. The checks drawn on the corporate account were signed by Roycroft and Mills. Mills testified that after the checks were drawn by Roycroft and signed, they were presented to him, together with substantiating vouchers, for counter signature. Two other corporations appear to have been managed by Roycroft. Builders Contract Corporation was chartered on August 11, 1965, and Houston-Gulf Corporation appears to have been chartered at an earlier date. Mills was president of these corporations. Roycroft appears to have been secretary of Houston-Gulf Corporation. This corporation had been in the business of financing the purchase of automobile liability insurance policies.

Builders Contract Corporation and Builders Equity Corporation were formed as a part of a plan to build apartments and townhouses. On October 6, 1965, Houston-Gulf Corporation entered into a contract with R. C. Reagan to acquire for a corporation to be formed certain property in Yale Street Acres Subdivision in the City of Houston, in return for shares of

stock in that corporation contingent on Houston-Gulf Corporation securing construction and permanent financing commitments within 90 days and beginning construction on townhouse units. Houston-Gulf Corporation, or its successor in interest, agreed to build or cause to be built upon the property townhouse-type dwellings to be sold as individual units unless Houston-Gulf Corporation elected to retain ownership of some of the units for lease or rental purposes. Houston-Gulf agreed to secure plans and specifications, contract for the construction and arrange for the mortgage money and financing of such units.

There is no evidence of the activities of these corporations in the interim, but on May 5, 1967, an agreement was made by Builders Equity Corporation and Len Saunders whereby Mr. Saunders undertook to secure construction financing for townhouses to be built on the Yale Street Acres property. In May, 1967, Mr. Withers met with Roycroft and Beckman to discuss investing in the stock of Builders Equity Corporation and Mr. Roycroft explained the plan of operations of the company. The plans, specifications and appraisal reports for the proposed construction were exhibited to him. He invested $3,000.00 in stock of the company.

Property in the Croyden Gardens Addition in the City of Houston was purchased by Roycroft as trustee from Stanley Development Co. on November 1, 1966. There was testimony that Mills, Roycroft, and Don White had agreed to make the monthly payments until one of the corporations was financially able to do so. Checks totalling $734.24 were issued to Stanley Development Co. on the Builders Equity Company account. Mills countersigned these checks. After the death of Roycroft there was no activity in any of the corporations. On April 17, 1968, Builders Contract Corporation executed a special warranty deed signed by Mills as president conveying the property in Croyden Gardens Addition back to Stanley Develop-

ment Co. in consideration of the cancellation of the purchase money note. He testified that he did not know that Roycroft as trustee had conveyed the property to the corporation, but that he had been advised by Stanley that title to the property was in the corporation and that the payments were delinquent.

■ It is the duty of the trial court to submit to the jury the controlling issues made by the written pleadings and the evidence. Rule 279, Texas Rules Civil Procedure. Issues submitted to the jury that are not ultimate or controlling issues are characterized as evidentiary issues and may be disregarded as being immaterial. *Southern Surety Co. v. Adams*, 119 Tex. 489, 34 S. W.2d 789 (1930); *J. Weingarten, Inc. v. Carlisle*, 172 S.W.2d 170 (Tex.Civ.App.— Galveston 1943, writ ref.); *H. E. Butt Grocery Co. v. Johnson*, 226 S.W.2d 501 (Tex.Civ.App.—San Antonio 1949, writ ref., n. r. e.); *Smith v. Chase*, 405 S.W.2d 450 (Tex.Civ.App.—Dallas 1966, writ ref., n. r. e.).

It is obvious that if Builders Equity Corporation was liable for the obligations for the payment of which the corporation's funds were used, there was no mismanagement or misappropriation of the corporation's funds. It was conclusively established at the trial that checks were drawn on the account of Builders Equity Corporation payable to Stanley Development Company and that these checks were co-signed by Mills. It is also established without dispute that these checks were given in payment of installments and taxes due on the Croyden Gardens Addition property. There is no evidence that at the time the payments were made Builders Contract Corporation owned a proprietary interest in the property. The deed from Builders Contract Corporation to Stanley Development Company is circumstantial evidence that sometime prior to his death Mr. Roycroft conveyed an interest in the property to Builders Contract Corporation. All of the checks in question were signed

by Mr. Roycroft. To support the cause of action alleged, findings were required determining whether the funds represented by the checks bearing the signature of Mr. Mills were used for purposes other than those promoting the business interests of Builders Equity Corporation, if so, whether Mr. Mills had knowledge of that fact, or was negligent in failing to acquaint himself with the use to which the funds were put. No ultimate issue was submitted to the jury concerning the payments to Stanley Development Company. The evidence was insufficient to support a finding that all of the money paid to Stanley Development Company served no useful business purpose of Builders Equity Corporation and constituted a misappropriation of the funds of that company.

Appellant has presented no points complaining of Special Issues 1 and 2, or of the answers thereto made by the jury. The appellee contends that the trial court erred in requiring a remittitur in the sum of $1,125.00, the sum found by the jury as having been paid out of corporate funds to discharge obligations of Harold B. Mills. He asserts that this action was taken by the trial court because he found that there was no evidence to support the jury verdict.

The trial court entered a judgment on the jury verdict. After a remittitur was filed, the motion for new trial was overruled. There was no motion to disregard the answers to Issues 1 and 2.

■ The rule to be applied in determining whether there was error in requiring a remittitur is that announced by the Supreme Court of Texas in Flanigan v. Carswell, 159 Tex. 598, 324 S.W.2d 835 (1959), where the court said:

". . . where the trial judge has ordered a party to remit a portion of the jury verdict as a condition to overruling a motion for new trial, the Court of Civil Appeals, in passing upon such action under Rule 328, supra, should allow the

trial court's action to stand unless it be of the opinion that the remittitur ordered by the trial court, when considered in the light of the whole record, would render the order of remittitur manifestly unjust . . . ."

■ It appears that payments were made to Houston-Gulf Corporation for rent and office expenses. The office was occupied by Mr. Roycroft, who was managing the affairs of Houston-Gulf Corporation, Builders Equity Corporation and Builders Contract Corporation. The files of these corporations were kept in this office, and their business was transacted from it. The office was also used by Mr. Roycroft in his business as an accountant. One exercising a fiduciary relationship to each of the corporations would have a duty to fairly allocate the expense of operating the office. The evidence would justify a finding that Builders Equity Corporation was paying more than its fair share of the expense. It would not support a finding that no expense should be allocated to that corporation. There is evidence that Builders Equity Corporation paid M. A. Baker $525.00. The evidence supports the conclusion that this was in payment of a loan made by him to Mills and Roycroft, the proceeds of which were deposited by them in the account of Builders Equity Corporation.

After a consideration of the record we conclude that the trial court did not abuse his discretion in requiring a remittitur.

■ Appellee complains that the trial court erred in refusing requested issues on exemplary damages. If on a new trial there is evidence that appellant profited personally by reason of misapplication of funds of the corporation, proper issues on exemplary damages should be submitted. International Bankers Life Insurance Company v. Holloway, 368 S.W.2d 567 (Tex. 1963).

■ Appellee asserts that by entering judgment against Mills personally, the trial

**344**

court concluded as a matter of law that Builders Equity Corporation was his alter ego. The facts developed in this case do not support the conclusion of law that Builders Equity Corporation was merely the alter ego of Harold Mills. He was not an officer of the corporation. The record reflects that he was owner of seven per cent of the issued stock, while Mr. Roycroft owned fifty-three per cent, and appellee owned twenty-seven per cent. The business was conducted principally by Mr. Roycroft. The balance of the stock was owned by Mr. Mills' friends and business associates, but there is no evidence that he dominated or controlled them. The facts do not bring this case within the rules followed in Murphy Bros. Chevrolet Co. v. East Oakland Auto Auction, 437 S.W.2d 272 (Tex.Civ.App.—El Paso 1969, writ ref., n. r. e., American Petroleum Exchange v. Lord, 399 S.W.2d 213 (Tex.Civ. App.—Ft. Worth 1966, writ ref., n. r. e.), or Houston-American Life Ins. Co. v. Tate, 358 S.W.2d 645 (Tex.Civ.App.—Waco 1968), cited by appellee.

■ The action of the trial court in requiring a remittitur, assuming that it was based on his decision that there was no evidence to support the answers to Special Issues 1 and 2, does not eliminate those issues as a basis for the judgment rendered. A remittitur is intended to reduce an excessive, but valid, judgment. Brito v. Brito, 346 S.W.2d 133 (Tex.Civ.App.—El Passo 1961, writ ref., n. r. e.). This court cannot reverse the judgment of the trial court and render judgment that appellee take nothing.

■ We are required to allow the trial court's action in requiring a remittitur to stand unless we find that the remittitur ordered is manifestly unjust. In such event we are required to restore the remittitur or such part thereof as is necessary to prevent the order from being manifestly unjust and render such judgment as the trial court should have rendered. Flanigan v. Car-

swell, 159 Tex. 598, 324 S.W.2d 835 (1959).

■ In this case, however, two damage issues were submitted. We have determined that the trial court failed to submit issues which would support one of these damage issues, and the trial court was of the opinion that there was no evidence to support the other issue. This court is of the opinion that there is some evidence to support the answer to this issue, but that the award made thereby is excessive. Since reversible error is present, it is unnecessary to determine the amount by which the judgment is excessive. We consider it unnecessary to extend this opinion by considering the other points of error presented by appellant's brief.

Reversed and remanded.