**C. Wesley HAMMONDS, Appellant,**

v.

**David Leslie ROPER et al., Appellees.**

**No. 748.**

Court of Civil Appeals of Texas, Corpus Christi.

April 5, 1973.

Rehearing Denied April 26, 1973.

Mahoney, Shaffer, Hatch & Layton, Charles W. Zahn, Jr., Corpus Christi, for appellant.

Robert L. Joseph, Sinton, for appellees.

## OPINION

NYE, Chief Justice.

This is a suit involving a dispute over the ownership of a horse. The plaintiff, C. Wesley Hammonds, originally owned a horse by the name of "Miss Barbara". In 1967 the horse in question hurt her foot. The plaintiff alleged that David Leslie Roper and his son, Scott Roper, (both defendants) were called upon by him to take care of the horse. In 1971, four years later, plaintiff demanded the return of the horse. The defendants refused, contending that plaintiff gave the horse to the defendant Scott Roper. One issue was submitted to the jury which found that plaintiff had made a gift of the horse to Scott Roper. It is from this adverse verdict and judgment that the plaintiff appeals.

The evidence is conflicting. Apparently, in 1967, after the horse in question had sustained a serious injury to her foot, the plaintiff turned over the possession of the horse to Scott Roper. At that time, according to the evidence the horse was worth less than $100.00. During the ensuing four years, after young Scott had obtained possession of the mare, he nursed

her back to health, trained her for roping, dogging, for showing, for pulling a buggy, for running the barrels and poles, and to be a top-notch riding horse. It was undisputed that the mare's value increased. The plaintiff alleged at the time he made demand for the return of the mare that she was worth at least $2,500.00.

According to the plaintiff's theory of the case, he loaned the horse to the defendant Scott Roper with the understanding that he could use the horse as long as he took care of it. The defendants, father and son, contended that the plaintiff made an outright gift of the horse to young Scott Roper in 1967.

Plaintiff's first four points of error complain of the trial court's special issue and the resulting judgment for the reason that there were no pleadings to support the special issue or the judgment. Plaintiff plead that he turned over the use of the mare to the defendants because the defendants had requested that they be permitted to use the mare "Miss Barbara" in connection with the boy's 4-H Club work. Plaintiff contended that the mare was used by the son Scott Roper in accordance with their understanding and agreement. Plaintiff argues that any gift was conditional and defendants' own pleadings substantiate this fact. Therefore, no legal gift was ever perfected. In 1971 plaintiff demanded the return of the mare from the defendants, which demand was refused. The defendants answered plaintiff's suit with a general denial. Subject to the general denial, they plead a cross-action for damages. The pertinent part of the defendants' pleading reads as follows:

"(2) Pleading further in the alternative, the Plaintiff, C. WESLEY HAMMONDS, gave the horse, commonly known as 'Miss Barbara,' to SCOTT ROPER just after the horse was seriously cut by a barbed wire and promised that the horse would belong to SCOTT ROPER *if he would take care of the horse.* (Emphasis supplied.)

(3) Plaintiff's C. WESLEY HAMMOND'*S*, words and actions led the Defendants to believe that the horse had been given to SCOTT ROPER. The Defendants never dreamed that C. WESLEY HAMMONDS would later try to claim that the horse was still his or demand that it be returned to him. The Defendants relied upon the representations of the Plaintiff, cared for the horse, trained the horse, possessed and treated the horse as if it were their own, believing, in fact, that it did belong to SCOTT ROPER.

\*　\*　\*　\*　\*　\*

WHEREFORE, Defendants pray that Plaintiff take nothing by his suit; that the Court order that said horse be returned to the Defendants and be declared to be the property of SCOTT ROPER . . . And for such other and further relief, at law and in equity, to which Defendants may show themselves justly entitled."

The plaintiff answered defendants' cross-action denying that any gift had taken place. The plaintiff's pleading in part was as follows:

"Plaintiff denies that he at any time either by expression, word or action, informed or told Defendants, or either of them, or anyone else, that he would give or sell the horse to them, or either of them, or to anyone else. On the contrary, the horse in question was specifically trained for Plaintiff because of Plaintiff's physical impairments."

The entire case was tried before the jury on the disputed theory that the plaintiff had made a gift of the mare to young Scott Roper. The plaintiff did not file any special exceptions or objections to Scott Roper's pleadings. The plaintiff contends, however, that the pleadings of the defendants were insufficient in that they did not actually set up the defense of an outright gift; that the pleadings were insufficient to support an issue of a gift because by their own admission the mare

was conditionally given to the defendants; the condition being, that Scott Roper could have the horse "if he would take care of the horse." . We disagree.

The general rule is that the pleadings shall be liberally construed. Where a defendant has plead a general denial, he may prove anything thereunder which tends to show that the plaintiff's allegations are untrue. Here the plaintiff claimed ownership of the horse. The test that is applied is if the matter that the defendant seeks to assert as a defense injects a new issue into the case not raised by the pleadings, it must be specially pleaded in order to render evidence in support thereof admissible. Where a defendant desires to introduce evidence of a fact that does not tend to rebut the facts of the plaintiff's case but shows an independent reason why the plaintiff should not recover on the case stated and proved by him, then the defendant must first plead the facts that will avoid the legal consequences of the plaintiff's case. Otherwise, the evidence will not be admissible and a judgment rendered on that evidence cannot be sustained. 45 Tex.Jur.2d, Physicians and Other Healers § 60–62; 38 C.J.S. Gifts § 64.

Here there is an action by plaintiff to recover property allegedly belonging to the plaintiff. Plaintiff's case is based on his superior right and title to the horse. Defendant may, under a general denial, and under the pleadings hereinabove quoted, prove that the horse was his, that a gift of the horse was made by plaintiff to him. There was no surprise by the defense offered. There was no objection by the plaintiff to the evidence introduced by the defendants. The plaintiff offered no exceptions to the defendants' pleadings. No exceptions were filed to make more certain any of the elements of the gift.

The Supreme Court of Texas has set forth the following requirements for an inter vivos gift:

" . . . The courts sustain the rule that to constitute a gift inter vivos there

must be a delivery of possession of the subject matter of the gift by the donor to the donee, and a purpose on the part of the donor to vest in the donee, unconditionally and immediately, the ownership of the property delivered. . . . " Wells v. Sansing, 151 Tex. 36, 245 S.W.2d 964 (1952).

Based on this law the learned trial judge correctly submitted a single issue with the accompanied instruction which was as follows:

## "ISSUE NO. 1

Do you find from a preponderance of the evidence that the Plaintiff Hammonds made a gift of the horse Miss Barbara to the Defendant Scott Roper?

Answer 'He did' or 'He did not'.

We, the Jury, answer: *HE DID.*

You are instructed in connection with Issue No. 1 in order for there to have been a gift of the horse by Hammonds to Scott Roper there must have been a delivery of possession of the horse by Hammonds to Scott Roper, with the intention on the part of Hammonds to vest the ownership of the horse in question in defendant, Scott Roper, immediately and unconditionally; and an acceptance of the horse by Scott Roper."

We hold that the pleadings of the defendants (absent special exceptions) were sufficiently broad to apprise the plaintiff of the defendants' ground of defense and sufficient to raise the issue of an inter vivos gift that was placed before the jury. Appellant's points one through four are overruled.

Plaintiff-appellant in his fifth, sixth and seventh points complain that there was no evidence to support the judgment of the court.

Under a no evidence contention, the fundamental principle of appellate review is that the record must be viewed in

the light most favorable in support of the judgment of the trial court and jury verdict. The appellate court must consider only the evidence and the inferences tending to support the finding of the jury, disregarding all evidence and inferences to the contrary. Garza v. Alviar, 395 S.W.2d 821 (Tex.Sup.1965); Fisher Construction Co. v. Riggs, 160 Tex. 23, 325 S.W.2d 126 (1959).

On one occasion, a witness, Mr. Horace Ridens, overheard a conversation that Mr. Hammonds (the plaintiff) had relative to the horse in question:

"Q Did you hear him (plaintiff) talk about the horse?

A Yes Sir.

Q What did he say?

A He said he was glad to see that the mare, that Scotty had made something out of the mare that he had given him."

Defendant David Leslie Roper testified as follows:

"Q Did you have occasion at your supper table to discuss the horse with Mr. Hammonds after she had her foot cut?

A Mr. Hammonds, during the course of conversation mentioned the fact that he didn't want the mare taken back to his place and take a chance on being hurt real, real bad and as long as Scotty could take care of her and care for her he could have her and if he ever wanted to sell her to contact him."

At another point in the record defendant Roper testified as to a conversation he had with the plaintiff Hammonds:

"Q Tell the jury what you recall happened that day.

A There was a rule in 4-H that in the event a question comes up pertaining to ownership of a horse that you must be able to produce legal ownership and since this mare had been a gift, well there were no papers or legal ownership and I went to him and asked him if he would give me the papers that would show legal ownership so the boy could show her in these A and H shows and he readily assured me that I did not need anything in writing that his word was good enough."

Another witness, Barbara Tipps, testified as follows:

"Q And you recall having a conversation with Mr. Hammonds after Miss Barbara cut her foot, about Miss Barbara?

A Yes sir, he told me he didn't think Miss Barbara would be able to be ridden any more and he was going to let Scott Roper have her because he thought he would care for her regardless of whether she could be ridden again or not."

Young Scott Roper (the defendant) testified unequivocally that the horse was given to him by the plaintiff Mr. Hammonds:

"Q And what did he (the plaintiff) say to you at that time Scotty?

A Mr. Hammonds told me, he said, the horse is yours, I don't want it back, but if you ever want to sell her or get rid of her contact him first and that's his words that he told me.

Q And did you then continue to take care of and nurse Miss Barbara after that?

A Yes, sir."

■ Although the plaintiff's points of error might possibly be construed as complaining of factually insufficient evidence even though they use the words "no evidence" throughout, we would hold nevertheless in such case, that the evidence was sufficient to support the jury's verdict.

See Calvert, "No Evidence" and "Insufficient Evidence" Points of Error, 38 Tex. L.Rev. 359 (1960). Appellant's points five, six and seven are overruled.

Judgment of the trial court is affirmed.