W. Oscar NEUHAUS, Trustee, Appellant,

v.

Douglas KAIN et al., Appellees.

No. 1164.

Court of Civil Appeals of Texas,
Corpus Christi.

Aug. 31, 1977.

Rehearing Denied Oct. 20, 1977.

Eugene J. Pitman, DeLange, Hudspeth, Pitman & Katz, Houston, Joe Entzminger, Bay City, Barnet B. Skelton, Price & Skelton, Houston, for appellant.

George D. Martin, Harris, Martin, Carmona, Cruse, Micks & Dunten, Galveston, L. DeWitt Hale, Corpus Christi, for appellees.

## OPINION

BISSETT, Justice.

This is a suit for specific performance of a contract for the conveyance of approximately 852 acres of land. The subject matter of this suit was first before this Court in an appeal from a summary judgment that was signed on August 29, 1973. See *Kain v. Neuhaus*, 515 S.W.2d 45 (Tex.Civ.App.—Corpus Christi, 1974, no writ), where the judgment of the trial court was reversed, and the cause was remanded for trial on the merits.

Following the remand, trial before a jury commenced on March 15, 1976. Based on jury findings which were favorable to Douglas Kain, et al., defendants, a take nothing judgment was signed on May 26, 1976. The judgment does not identify each individual defendant by name, but simply refers to all defendants as "the Defendants, DOUGLAS KAIN, ET AL." W. Oscar Neuhaus, Trustee, plaintiff, has duly perfected an appeal from that judgment.

The Kain family, defendant-appellees, were the owners of undivided interests in varying proportions of certain tracts of land in Matagorda County, Texas. A contract of sale covering the land, hereinafter sometimes called "Earnest Money Contract" and sometimes referred to as "contract," was entered into by and between the members of the Kain family, as sellers, and W. Oscar Neuhaus, Trustee, as purchaser. The contract, among other provisions, contained an express provision to the effect that each seller who signed the same would reserve unto himself, his heirs and assigns, in the deed that was to be subsequently executed, an undivided one-half of his present interest in the minerals on, in and under the land. No mention was made therein that the sellers would also retain the right to negotiate future leases for mineral development of *all* minerals on, in and under the land. The contract, when presented to the defendants for signature, had already been signed by plaintiff.

On December 2, 1971, Barnet B. Skelton, Plaintiff's attorney, personally delivered the contract to Douglas Kain. After some discussion, hereinafter detailed, and after some interlineations were made at the insistence of Douglas Kain which are not questioned in this appeal, the contract was signed by Douglas Kain. Thereafter, the contract was signed by the other members of the Kain family.

Skelton, by letter dated February 23, 1972, advised the sellers that the purchaser was ready to close the transaction. Accordingly, and in conformity with the terms of the contract, cashiers' checks aggregating

$56,000.00, the cash down payment, and the several vendors' lien notes for the balance of the purchase price were executed and tendered the defendants, together with a general warranty deed with vendors' lien retained, wherein there was reserved unto sellers, their heirs and assigns, forever, an undivided one-half (½) of their present interest in the minerals on, in, and under the subject land, together with 100% of the royalty then being paid from certain mineral leases covering part of the land involved.

All of the sellers, except Bobby M. Blanchard, refused to execute the deed or to accept the cashiers' checks and vendors' lien notes because the deed did not expressly reserve unto them the leasing rights of *all* the minerals on, in and under the subject land. Bobby M. Blanchard signed the deed on February 28, 1972. Plaintiff filed suit on April 20, 1972 against all of the sellers, except Bobby M. Blanchard, for specific performance of the contract.

Thomas Kain, Jr., by deed dated February 8, 1972, conveyed a portion of his interest in the subject land to Thomas Patrick Kain, Bernice Kain Dodd, Mamie Kain Littlejohn, Marie Ainsworth Stephenson, Macie Ainsworth Kain, and Virginia Kain Grisham. All of the grantees in the deed had actual notice of the existing contract of sale.

The defendants named in plaintiff's original petition were: Douglas Kain and wife, Grace Landrum Kain; George Kain and wife, Annie Shelby Kain; Margarite Kain Berglund; Inez Kain Swagerty; Thomas Kain, Jr. and wife, Macie Kain; Barney Earl Boudreaux and wife, Patsy Boudreaux; Roger Blanchard; Hugh Patrick Blanchard; Lawrence Drew Kain; Barbara Rehak; Thomas Patrick Kain; Bernice Kain Dodd; Mamie Kain Littlejohn; Virginia Kain Grisham; Marie Ainsworth Marks; and Doris Ainsworth Stephenson.

After suit and lis pendens notice had been filed, the defendant Margarite Kain Berglund conveyed her undivided interest in the land in question to Conrad Berglund, Jr., Elizabeth Berglund Mathis, Kenneth Leo Berglund, Billy Penrod Berglund, and George Thomas Berglund, who were substituted as parties defendant in her stead. Also, during the same period of time, Annie Shelby Kain (wife of George Kain) died, and Carol Pool, George E. Kain and Georgie Brueggan were made parties defendant upon suggestion of her death.

All persons who were named as defendants in plaintiffs' original petition plus those persons who became substituted defendants by reason of the conveyance by Margarite Kain Berglund and of the death of Annie Shelby Kain were defendants in the trial court, and are appellees in the appeal now before this Court.

The judgment as to Roger Blanchard, Hugh Patrick Blanchard, Marie Ainsworth Marks and Doris Ainsworth Stephenson must be reversed and rendered for plaintiff. Summary judgment was rendered against them on August 29, 1973. They did not perfect an appeal from that judgment, and their attempt to appeal therefrom was dismissed by this Court. See *Kain v. Neuhaus*, supra. Consequently, the summary judgment heretofore rendered as to them became final, and the fact that they continue to assert an interest in the subject matter of this litigation up to and including the filing of appellees' brief and the submission of this cause now before this Court in the instant appeal is of no consequence. Plaintiff's point No. 46 is sustained.

The defense urged by defendants to the action brought against them by plaintiff was fraud. They alleged in substance: 1) on December 2, 1971, the contract which is sought to be enforced was brought to the home of Douglas Kain "by the plaintiff's attorney and representative, Barnet B. Skelton," who "represented to Douglas Kain and wife, Grace Landrum Kain, that the Kain family would be allowed to retain the right to negotiate the mineral interest under the land" covered by the contract, and that a provision to that effect "would be inserted into the Earnest Money Contract upon return to Houston by the said Barnet B. Skelton"; 2) such a provision was not thereafter inserted into the contract; 3)

Douglas Kain and wife, Grace Landrum Kain, relied "upon the express representation of the said Barnet B. Skelton," signed the contract, and except for such express representation would not have signed it; 4) "thereafter, the said Douglas Kain used his influence as head of the Kain family" to persuade George Kain and wife, Annie Shelby Kain, Thomas Kain, Jr., and wife, Macie Ainsworth Kain, Margarite Kain Berglund, and Inez Kain Swagerty to sign the contract; 5) Barbara Rehak signed the contract "on the express representation of the said Barnet B. Skelton that the elder Kains needed the money, that not to sign the contract would deprive them of the use of the money in the later years of the lives of the elder Kains"; she relied on such statements, and "had it not been for said false and fraudulent representation she would not have signed the Earnest Money Contract"; 6) Skelton represented to Patsy Boudreaux and Barney Boudreaux that the purchasers "were running hot and cold on the deal, that if all owners did not sign, the deal would not be consummated, and it looked to him as though the elder Kains needed the money, that it was almost impossible to partition the land and very expensive, and that 'he would hate to have this on his conscience' "; because of such representations, Patsy and Barney Boudreaux signed the contract, and except for such representations would not have signed it. Defendants further alleged generally that their signatures to the contract were fraudulently obtained "in that the statements and representations made by Barnet B. Skelton as an attorney and representative of the plaintiff were made to the defendants to induce them to sign the earnest money contract . . . and except for said expressed representations made by the plaintiff's attorney and representative, Barnet B. Skelton, the Kain family would not have signed the Earnest Money Contract, that they relied on said representations," which "have not been consummated by the plaintiff."

The jury found, in their answers to Special Issues 1 and 2, that plaintiff, at all material times, was ready, willing and able to perform his obligations under the con-tract, and that he "timely tendered performance" thereunder. Those jury findings are not questioned by defendants in this appeal.

Special Issues 3 to 12 read:

## "SPECIAL ISSUE NO. 3

Do you find from a preponderance of the evidence that Barnet B. Skelton represented to Douglas Kain that the earnest money contract would be changed so as to retain to the Kains the right to negotiate the minerals?

Answer 'We do' or 'We do not.'

ANSWER: We do

If you have answered Special Issue No. 3 'We do', and only in that event, then answer:

## SPECIAL ISSUE NO. 4

Do you find from a preponderance of the evidence that Barnet B. Skelton made such representation to induce Douglas Kain to sign the earnest money contract when he (Skelton) had no present intention of performing in the future on such representation?

Answer 'We do' or "We do not'.

ANSWER: We do

If you have answered Special Issue No. 4 'We do', and only in that event, then answer:

## SPECIAL ISSUE NO. 5

Do you find from a preponderance of the evidence that such representation by Barnet B. Skelton was a material inducement to Douglas Kain to sign the earnest money contract?

By the term 'material inducement' is meant a representation which is believed and relied on by the persons to whom it is made, and which moves or induces them to act in a manner that they would not have acted had such representation not been made.

Answer 'We do' or 'We do not'.

ANSWER: We do

If you have answered Special Issue No. 5 'We do', and only in that event, then answer:

## SPECIAL ISSUE NO. 6

Do you find from a preponderance of the evidence that Douglas Kain relied on

the representation of Barnet B. Skelton and would not have signed the earnest money contract but for such representation?

Answer 'We do' or 'We do not'.
ANSWER: We do

### SPECIAL ISSUE NO. 7

Do you find from a preponderance of the evidence that Barnet B. Skelton represented to George Kain that the earnest money contract would be changed so as to retain to the Kains the right to negotiate the minerals?

Answer 'We do' or 'We do not.'
ANSWER: We do

If you have answered Special Issue No. 7 'We do', and only in that event, then answer:

### SPECIAL ISSUE NO. 8

Do you find from a preponderance of the evidence that Barnet B. Skelton made such representation to induce George Kain to sign the earnest money contract when he (Skelton) had no present intention of performing in the future on such representation?

Answer 'We do' or 'We do not'.
ANSWER: We do

If you have answered Special Issue No. 8 'We do', and only in that event, then answer:

### SPECIAL ISSUE NO. 9

Do you find from a preponderance of the evidence that such representation by Barnet B. Skelton was a material inducement to George Kain to sign the earnest money contract?

By the term 'material inducement' is meant a representation which is believed and relied on by the persons to whom it is made, and which moves or induces them to act in a manner that they would not have acted had such representation not been made.

Answer 'We do' or 'We do not'.
ANSWER: We do

If you have answered Special Issue No. 9 'We do', and only in that event, then answer:

### SPECIAL ISSUE NO. 10

Do you find from a preponderance of the evidence that George Kain relied on the representation of Barnet B. Skelton and would not have signed the earnest money contract but for such representation?

Answer 'We do' or 'We do not'.
ANSWER: We do

If you have answered Special Issue No. 6 'We do,' and only in that event, then answer:

### SPECIAL ISSUE NO. 11

Do you find from a preponderance of the evidence that Douglas Kain, in reliance on the representation of Barnet B. Skelton, used his influence after he had signed the earnest money contract to obtain the signatures of other members of the Kain family to the earnest money contract?

Answer 'We do' or 'We do not' as to each member of the Cain (sic) family:

| | | |
|---|---|---|
| (a) | Grace Kain | We do |
| (b) | Margarite Kain Berglund | We do |
| (c) | George Kain | We do |
| (d) | Annie Kain | We do |
| (e) | Thomas Kain, Jr. | We do |
| (f) | Macie A. Kain | We do |
| (g) | Inez Kain Swagerty | We do |
| (h) | Barbara Rehak | We do |
| (i) | Lawrence D. Kain | We do |
| (j) | Barney Boudreaux | We do |
| (k) | Patsy Boudreaux | We do |

If you have answered Special Issue No. 11 'We do,' as to any member of the Kain family, and only in that event, then answer as to those members of the Kain family:

### SPECIAL ISSUE NO. 12

Do you find from a preponderance of the evidence that other members of the Kain family relied on the influence of Douglas Kain and but for such influence would not have signed the earnest money contract?

Answer 'We do' or 'We do not' as to each member of the Kain family:

(a) Grace Kain — We do
(b) Margarite Kain Berglund — We do
(c) George Kain — We do
(d) Annie Kain — We do
(e) Thomas Kain, Jr. — We do
(f) Macie A. Kain — We do
(g) Inez Kain Swagerty — We do
(h) Barbara Rehak — We do
(i) Lawrence D. Kain — We do
(j) Barney Boudreaux — We do
(k) Patsy Boudreaux — We do

The contract contained the following provision:

"2–a.

It is further agreed that the covenants, agreements, and provisions of this contract shall be binding on the signatory parties hereto and their respective heirs, executors, administrators, executors (sic), successors and assigns, and shall not be merged in the deed provided for herein, but shall survive the same."

The contract further provided that if all of the named sellers did not sign it, that the purchaser had the option of declaring it null and void, or he could "proceed to purchase the interests, respectively, of those who do sign this contract." We hold that the contract constituted a separate contract by and between each of the sellers who signed it and plaintiff, the purchaser.

Plaintiff, in point 44, contends that the trial court erred in rendering judgment in defendants' favor because there was no finding that Skelton acted within the scope of his authority to act for plaintiff, and there was no evidence that conclusively established such authority. The point cannot be sustained. Plaintiff, when asked if he considered Townley (an employee of Quintana Petroleum Corporation who had several contacts with various members of the Kain family) and Skelton "your agents or employees in connection with this transaction," replied:

"I would consider them my agents to negotiate this contract."

That statement was not explained or limited in any way. In that state of the record, we hold that it was conclusively shown by the evidence that Skelton had actual authority to act for plaintiff at all stages in negotiating the contract. There was no need to submit an issue relating to Skelton's authority. Point 44 is overruled.

It is asserted in Points 2 and 3 that the trial court erred in permitting Douglas Kain and Grace Kain to testify over plaintiff's objections, concerning the alleged representation made by Skelton to Douglas Kain on December 2, 1971, on the ground that such testimony contradicted the terms of a written instrument and, therefore, violated the Parol Evidence Rule. Plaintiff also makes the same contention in point 20, where he says that it was error to permit Georgie Brueggan to testify as to the alleged representations made by Skelton to George Kain. None of the points have any merit.

It is well settled that extrinsic evidence is admissible when there is a claim that a person was induced by fraud to enter into a written contract. The extrinsic evidence is admitted not to vary, add to, or contradict the terms of the written instrument, but to show that the writing, from its inception, never became legally effective because of fraud. *Dallas Farm Machinery Company v. Reaves*, 158 Tex. 1, 307 S.W.2d 233 (1957); *King v. Wise*, 282 S.W. 570 (Tex.Com.App.1926); *Guisinger v. Hughes*, 363 S.W.2d 861 (Tex.Civ.App.—Dallas 1962, writ ref'd n. r. e.); *Stone v. Williams*, 358 S.W.2d 151 (Tex.Civ.App.—Houston 1962, writ ref'd n. r. e.); *Roy Klossner Co. v. McIntire*, 301 S.W.2d 197 (Tex.Civ.App.—San Antonio 1957, writ ref'd n. r. e.).

In the instant case, the defendants alleged that Skelton made an oral representation to them concerning the leasing rights of the minerals which induced them to sign the contract. The testimony was clearly admissible; it was not offered to vary, contradict or add to the terms of the written contract. Points 2, 3 and 20 are overruled.

Plaintiff, in point 1, contends that the judgment should be reversed because there are no pleadings to support the submission of Special Issue 4 to the jury. He argues that all of the essential elements of

fraud with respect to the representation made to Douglas Kain were not alleged in that there is no allegation to the effect that Skelton did not intend to insert a provision in the contract which would give the Kain Family "the right to negotiate the minerals" at the time he allegedly made such a representation. We disagree. This is not a case where the fraud which is pleaded as a defense is based upon a promise to perform an act in the future. The fraud that defendants alleged is the false representation that they would be allowed to retain the leasing rights to the minerals; that they relied on the representations; and that but for such representations they would not have signed the contract. The promise to, at a later date, write the particular clause into the contract was no more than a promise to perform a mechanical act, which would have to be done if the real agreement was to be evidenced by a writing. Moreover, the issue also inquired into whether the representation induced Douglas Kain to sign the contract. Point 1 is overruled.

Plaintiff says in points 16, 17, 18 and 19 that the pleadings did not support the submission of Special Issues 7, 8, 9 and 10, which made certain inquiries concerning the representation to George Kain, and also says in points 36 and 37 that the pleadings did not support the submission of subparagraphs (a), (h), (i), (j) and (k) of Special Issues 11 and 12, which inquired about Grace Kain, Barbara Rehak, Lawrence D. Kain, Barney Boudreaux and Patsy Boudreaux, respectively.

 Defendants' pleadings, though general, were not excepted to by plaintiff, and should, therefore, be liberally construed. Rule 45, T.R.C.P. *Gulf, Colorado & Santa Fe Railway Co. v. Bliss*, 368 S.W.2d 594, 598 (Tex.Sup.1963); *Hammonds v. Roper*, 493 S.W.2d 569, 572 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n. r. e.). The defendants' trial pleading alleged that their signatures were obtained in fraud of said defendants "in that the statements and representation made by Barnet B. Skelton . . . were made to the defendants to induce them to sign the earnest money contract . . . ." This general allegation amounted to no more than a legal conclusion. However, it is permissible to plead a legal conclusion (in the absence of an exception) provided the other party is not misled thereby. *Paxton v. Spencer*, 503 S.W.2d 637 (Tex.Civ.App.—Corpus Christi 1973, no writ); *Texas Employers' Insurance Association v. Price*, 336 S.W.2d 304 (Tex.Civ.App.—Eastland 1960, no writ); *Hankey v. Employer's Casualty Co.*, 176 S.W.2d 357 (Tex. Civ.App.—Galveston 1943, no writ). Since plaintiff did not except to defendants' answer, and in view of the fact that fraud was alleged generally as to *all* defendants, we hold that the pleadings were sufficient to support the submission of Special Issues 7, 8, 9 and 10. Points 16, 17, 18 and 19 are overruled.

 Plaintiff also asserts (points 36 and 37) that there are no pleadings to support the submission of subparagraphs (a), (h), (i), (j) and (k) of Special Issues 11 and 12 to the jury. We agree. Defendants' pleadings did not allege that Douglas Kain used his influence to obtain the signatures of Grace Kain, Barbara Rehak, Lawrence D. Kain, Barney Boudreaux or Patsy Boudreaux to the contract, or that they, or any of them, relied on his influence would not have signed the same. Points 36 and 37 are sustained.

Plaintiff, in points of error 4 through 15, contends that the trial court erred in submitting Special Issues 3, 4, 5 and 6 to the jury (inquiring about Douglas Kain) for the reasons: 1) there is no evidence to support the findings; 2) the evidence is factually insufficient to support the findings; and 3) the findings are against the overwhelming weight and preponderance of the evidence.

We follow the well established rule governing the disposition of "no evidence," "factually insufficient evidence," and "against the great weight and preponderance of the evidence" points. See 38 Tex.L. Rev. 361 (1960), Calvert, "No Evidence" and "Insufficient Evidence" Points of Error.

Douglas Kain testified that he had had previous discussions with Virgil Townley

concerning the proposed sale and it had been agreed between him and Townley that the Kain family would retain the leasing rights to all of the minerals, including the minerals that were to be conveyed to plaintiff upon the execution of the deed to the land in question. He refused to sign the contract until, according to him, Skelton promised to put "my agreement and Virgil's" in the contract, which he explained was a clause which gave the Kain family the right "to negotiate the minerals" on the land to be sold under the contract. He further testified that Skelton, prior to the time he (Douglas Kain) signed the contract told him that the Kain family would have the right "to do the leasing" of the minerals and that he (Skelton) would insert such a clause in the contract "when I get back to Houston"; that he believed Skelton, and would not have signed the contract had Skelton not made such representations to him.

Skelton admitted that there was a discussion concerning the leasing of the land for mineral development, but that plaintiff had instructed him not to put a provision into the contract which would have allowed the Kains to retain the leasing rights to the minerals which were to be conveyed to plaintiff. He denied making the representation to Douglas Kain (or to any other member of Kain family) which Douglas Kain said he made to him.

The jury resolved the conflict in the testimony of Douglas Kain and that of Skelton in favor of the former. It was within their sole province as trier of the facts to believe Douglas Kain and not to believe Skelton. *United States Fidelity & Guaranty Co. v. Carr,* 242 S.W.2d 224 (Tex. Civ.App.—San Antonio 1951, writ ref'd); *Johnson v. Buck,* 540 S.W.2d 393 (Tex.Civ. App.—Corpus Christi 1976, writ ref'd n. r. e.). There is evidence of probative value which supports each of the answers to Special Issues 3, 4, 5 and 6. The answers are not against the overwhelming weight and preponderance of the evidence. We have no authority to substitute our judgment for that of the jury with respect to those issues.

*Bardwell v. Anderson,* 325 S.W.2d 929 (Tex. Civ.App.—Houston 1959, writ ref'd n. r. e.); *Dyer v. Sterett,* 248 S.W.2d 234 (Tex.Civ. App.—San Antonio 1952, writ ref'd n. r. e.). Points 4 to 15 are overruled.

The jury's answers to Special Issues, 7, 8, 9 and 10 are also challenged in points 22 to 33 on "no evidence," "factually insufficient evidence" and "against the overwhelming weight and preponderance of the evidence" points. The issues concern George Kain. He did not testify at the trial.

On the same day that Douglas Kain signed the contract, he and Skelton went to the home of George Kain and wife, Annie Shelby Kain. Douglas Kain testified:

"Q Did you explain the lease, the Earnest Money Contract to George?

A Yes, sir, I did, and his wife, and I told her he had not put the leasing rights in there, and she said she wouldn't sign it, and Mr. Skelton said, 'It will be in there in a few days,' said put it in there in a few days.

Q Did you ask George and his wife to sign the Earnest Money Contract?

A Yes, sir."

He further testified that George Kain did not ask or say anything about the contract prior to the time he signed it. He (Douglas Kain) also stated that he did not discuss the contract with George on the day that George signed it.

Georgie Brueggan, an adult daughter of George Kain and wife, Annie Kain, was present during the discussion concerning the mineral leasing rights. She testified:

"A . . . Mr. Skelton told my mother and father, 'You just sign right now and I will come back to you in a couple of days, it will be just like you want it.'"

She also testified that there was a discussion between her mother and Douglas Kain, and that her mother said that she wanted the Kain family to have the leasing rights of the minerals, but she did not say "what portion of the minerals" she had in mind. When asked "Did your father say anything about it?" she replied:

"No. My father did not say anything about it at all. All that was said is what my mother said."

The only evidence that Skelton made any representation to George Kain is found in the testimony of Georgie Brueggan, and that is circumstantial. There is no testimony that George Kain asked about the leasing rights of the minerals which were to be conveyed to plaintiff; all such inquiries were made by his wife, Annie Kain. There is no evidence that George Kain relied on the representation or that he was induced to sign the contract because of the representation and would not have signed it but for such representation. There is no testimony that George Kain expressed dissatisfaction with the contract in its then existing form or satisfaction after having heard Skelton's promise.

■ While there is some evidence that Skelton made the disputed representation to George Kain, there is simply no evidence that George Kain, in signing the contract, relied in whole or in part on a promise of Skelton to permit the Kain family to retain executory leasing rights in the minerals which were to be conveyed to plaintiff. Point 22, the "no evidence" point respect to the jury's answer to Special Issue 7, which inquired if Skelton made the disputed representation to George Kain is overruled. Points 25, 28 and 31, the "no evidence" points as to Special Issues 8, 9 and 10, are sustained.

We next consider points 34 and 35, wherein it is asserted that the trial court erred in submitting Special Issues 11 and 12 to the jury, in that they do not constitute ultimate issues, and the affirmative answers do not afford any basis for the rendition of the judgment in favor of the defendants as to whom inquiry was made in the respective issues. Plaintiff duly and timely objected to the submission of those issues on the same grounds now urged in this appeal.

■ Clearly, only those special issues controlling the disposition of the case that are raised by the written pleadings and the evidence in the case, are to be submitted to the jury. Rules 277, 279, T.R.C.P. *Wichita Falls & Oklahoma Ry. Co. v. Pepper*, 134 Tex. 360, 135 S.W.2d 79 (1940); *Perales v. Braslau's Furniture Company*, 493 S.W.2d 638 (Tex.Civ.App.—Corpus Christi 1973, writ ref'd n. r. e.). Issues which are submitted to the jury which are not ultimate or controlling issues are characterized as evidentiary issues and may be disregarded as being immaterial. *Mills v. Withers*, 483 S.W.2d 339 (Tex.Civ.App.—Houston [1st Dist.] 1972, no writ); *H. E. Butt Grocery Co., v. Johnson*, 226 S.W.2d 501 (Tex.Civ. App.—San Antonio 1949, writ ref'd n. r. e.).

■ Neither of the issues inquired about any representation or false promise made by Skelton to the members of the Kain family therein named. The issues did not inquire whether any of them were even aware of any alleged promise or representation made by Skelton to anyone concerning minerals or mineral rights, nor did they inquire as to whether the named members of the Kain family were induced to sign the contract because of the disputed representation that was made by Skelton to Douglas Kain, nor did they inquire into whether the affected defendants signed the contract in reliance on a representation made by Skelton. The issues inquire only if Douglas Kain used his influence to obtain the signatures of the named members of the Kain family, and whether they relied on that influence in signing the contract.

The issues are evidentiary and are not ultimate or controlling issues. The affirmative answers by the jury cannot form any basis for the rendition of the judgment in favor of persons who are named in the issues. Points 34 and 35 are sustained.

The issue in this case is fraud. At the close of the evidence, plaintiff moved for an instructed verdict on several grounds. Included therein is an assertion that there is no evidence that the defendants were induced to sign the contract because of fraud. The motion was overruled, and that ruling is attacked by plaintiff in point 45.

Fraud is a misrepresentation as to a material fact which induces another to rely primarily on such misrepresentation to his detriment or injury. To maintain an affirmative defense of fraudulent representation, the defendant must plead and prove the following elements: 1) that a material misrepresentation was made; 2) that it was false; 3) that plaintiff knew it was false when he made it, or that he made it recklessly without any knowledge of its truth and as a positive assertion; 4) that he made it with the intention that the defendant act upon it; 5) that defendant acted in reliance upon it; and 6) that defendant thereby suffered injury. *Custom Leasing, Inc. v. Texas Bank and Trust Company of Dallas*, 516 S.W.2d 138, 143 (Tex.Sup.1974); *Oilwell Division, United States Steel Corporation v. Fryer*, 493 S.W.2d 487, 491 (Tex.Sup.1973). Failure to plead or prove any one of the elements of fraud in a case where the defense to a suit for specific performance rests solely on fraud will be sufficient for the granting of a motion for an instructed verdict in favor of the plaintiff. *Texas & P. Ry. Co. v. Poe*, 131 Tex. 337, 115 S.W.2d 591 (1938); *Wilson v. Jones*, 45 S.W.2d 572 (Tex.Com.App.1932, holding approved).

To avoid a contract for fraud, the fraudulent representation must have been relied upon to the extent that it was a controlling factor in inducing the making of the contract, and without which the contract would not have been made. *First State Bank of Bellaire v. Olde Colony House, Inc.*, 414 S.W.2d 221, 223 (Tex.Civ. App.—Waco 1967, writ ref'd n.r.e.); 25 Tex. Jur.2d Fraud and Deceit § 20 p. 641 (1941).

Fraud is never presumed, and it is a rule of universal application that until fraud is proved, the presumption is in favor of the fairness of the transaction. *Turner v. Lambeth*, 2 Tex. 365 (1847); *Hazle v. McDonald*, 449 S.W.2d 343 (Tex.Civ.App.— Dallas 1969, no writ). A court should "presume a want of fraud rather than the existence of fraud in a transaction." *Hawkins v. Campbell*, 226 S.W.2d 891 (Tex.Civ.App. —San Antonio 1950, writ ref'd n.r.e.).

In the absence of undisputed evidence as to the several elements of fraud where fraud is pleaded defensively, it is incumbent upon a defendant to obtain a favorable jury answer to each element of fraud. *Denton Publishing Company v. Boyd*, 460 S.W.2d 881, 882 (Tex.Sup.1970); G. Hodges, Special Issue Submission in Texas § 76, at 195 (1959). The failure to request the submission of any element of an independent ground of defense, or the failure by the trial curt to submit such an element (without objection to the charge), results in the waiver of that ground by the party who relies upon it. *Texas Employers Insurance Association v. Motley*, 491 S.W.2d 395, 398 (Tex.Sup.1973); *Ratcliffe v. Ormsby*, 298 S.W. 930 (Tex.Civ.App.—Eastland 1927), writ ref'd 117 Tex. 242, 1 S.W.2d 1084 (1928).

As has been stated George Káin did not testify. Furthermore, neither Margarite Kain Berglund, Inez Kain Swagerty, nor Lawrence Drew Kain testified.

It is undisputed that George Kain and wife, Annie Kain, Thomas Kain, Jr. and wife, Macie Kain, Margarite Kain Berglund, Inez Kain Swagerty, and Barbara Rehak signed the contract on December 2, 1971, and further that it had been signed by Douglas Kain prior to the time they signed it. Douglas Kain testified that after he and his wife had signed the contract, he and Skelton went to the residence of Margarite Kain Berglund, who signed it at his request. She was deceased at the time of trial. Douglas Kain testified that although she did "go over it," she "didn't understand nothing." There is no evidence of any discussion of the contract, and there is no evidence that either Douglas Kain or Skelton made any statements or representations to her.

Douglas Kain and Skelton next went to the home of George and Annie Kain. We have already stated what happened when the contract was presented to them for signature. There is no need to restate that evidence.

Douglas Kain and Skelton then proceeded to the home of Thomas Kain, Jr. Douglas

Kain said that he did not discuss the leasing of the minerals with either Thomas Kain, Jr., or his wife, Macie Kain. He did not ask them to sign the contract. He further testified that he made no representation at all to either Thomas Kain, Jr., or Macie Kain. Shortly thereafter, Inez Kain Swagerty came to the home of Thomas Kain, Jr. Douglas Kain testified that he did not ask her to sign the contract, and that there was no discussion with her about the minerals. Mrs. Swagerty, at some indeterminate time, left the room and telephoned her daughter (who did not testify at the trial). She signed the contract after she had finished her telephone conversation with her daughter.

Thomas Kain, Jr., testified that neither Skelton nor Douglas Kain explained to him what the "Earnest Money Contract meant"; that he asked no questions of Skelton about the contract; that Douglas Kain said something about the minerals, but he did not remember what was said; and that he did not read the contract before he signed it. When asked if he would have signed the contract if Douglas Kain had not already signed it, he said:

"I don't imagine I would."

There is no evidence that anyone discussed the contract with Macie Kain. There is no evidence that anyone told her or her husband of the alleged representation by Skelton to Douglas Kain with respect to the leasing of minerals. She said that she would not have signed the contract if Douglas Kain had not signed it first.

Skelton testified that he thoroughly explained the terms of the written contract to each of the several Kain family members who signed the contract on December 2, 1971. He further said that he did not discuss the mineral leasing rights with anyone other than Douglas Kain, but limited his discussion with the other Kains to the terms of the contract as they appeared in the written instrument which they signed.

In the evening of December 2, 1971, Skelton went to the home of Chris and Barbara Rehak and obtained their signatures to the contract. Douglas Kain was not with him at that time. Chris Rehak testified that Skelton told them that all of the Kains had to sign or the deal would not go through; that time was of the essence; and that "the older Kains needed the money." Barbara Rehak testified that she would not have signed the contract if Douglas Kain had not already signed it. Skelton denied making the statements to either Barbara or Chris Rehak.

Skelton testified that he telephoned Lawrence Drew Kain and informed him that most of the other Kains had signed a contract to sell the land in question. He arranged a meeting with Lawrence Drew Kain at the Gregg County Airport on December 4, 1971, and he said that on that day, after a thorough discussion of the terms of the contract, Lawrence Drew Kain signed it. He further testified that there was no discussion with Lawrence Drew Kain of the alleged Kain family's right to lease any part of the minerals. Skelton's testimony in this respect is undisputed.

Later, Skelton met with Barney and Patsy Boudreaux in their home. Douglas Kain was not present. Although Skelton explained the terms of the contract, neither would sign at the first meeting. Each recalled that Skelton stated to them that they needed to act quickly on this matter since the purchaser was "running hot and cold"; that everybody had to sign to close the deal; and that they should sign the contract because the older Kains could use the money. After the initial meeting, Barney Boudreaux testified that he was contacted by Thomas Kain, Jr., and asked to sign the contract for the old people. Patsy Boudreaux testified that several family members contacted her in regard to signing the contract. Thereafter, Patsy and Barney Boudreaux went to Skelton's office and signed the contract. Douglas Kain was not present at that time. Patsy Boudreaux testified that she would not have signed the contract if Douglas Kain had not signed it and had it not been for Skelton's numerous statements. She further testified that if any member of the Kain family had not wanted to sign the contract that she would not have signed it.

 We recognize the rule that a fraudulent representation may be either direct or indirect, and that a person intending to defraud another may make the representation to that person, or he may make such representation to another with the intent that it should be repeated to the intended party for the purpose of deceiving him. *Custom Leasing, Inc. v. Texas Bank & T. Co. of Dallas*, 516 S.W.2d 138 (Tex.Sup. 1974); *American Indemnity Co. v. Ernst & Ernst*, 106 S.W.2d 763, 765 (Tex.Civ.App.—Waco 1937, writ ref'd). There is neither pleading nor proof in this case that Skelton made the representation to Douglas Kain, with the intent that Douglas Kain communicate the representation to the other members of the Kain family in order to obtain their signatures to the contract. Therefore, this case does not fall within the rule which will excuse performance of the contract because of an indirect fraudulent representation.

 It is stated in 37 Am.Jur.2d, Fraud and Deceit, § 226:

"A representation, to be relied upon, must come to the knowledge of the complaining party, and it must appear that it was made directly or indirectly to him, since it cannot be supposed that he was influenced by a statement which was neither made nor communicated to him. In other words, it is wholly immaterial that false statements were made unless in some way they were brought home to the other party and were suffered to influence him in making the contract in question."

We follow that rule in disposing of this appeal as to some of the defendants.

There is no evidence that Margarite Kain Berglund, Thomas Kain, Jr., Macie Kain, Inez Kain Swagerty, Barbara Rehak, Lawrence Drew Kain, Barney Boudreaux or Patsy Boudreaux, knew of the representation that Skelton made to Douglas Kain. They could not have relied on such representation as an inducement to signing the contract.

There is some evidence that the representation by Skelton to Douglas Kain was communicated to Grace Kain, George Kain and wife, Annie Kain. However, there is no evidence that either of them relied on such representation or were induced to sign the contract because of such representation.

The motion for an instructed verdict with respect to the defendant Douglas Kain was properly overruled. The motion with respect to all other defendants should have been sustained. The remaining defendants did not meet their burden of proof. Point 45 as to Douglas Kain is overruled, and the point is sustained as to all other defendant-appellees.

 We have carefully considered plaintiff's point 47 wherein he states:

"The Court of Civil Appeals erred in refusing to file appellant's original brief submitted in this cause, and in requiring rebriefing by appellant."

The original brief contained 114 points of error. After rebriefing, 47 points are brought forward. The point has no merit. Point 47 is overruled.

We have disposed of 37 of the 47 points of error presented by this appeal. In view of our disposition of the appeal, it is not necessary that we consider defendants' remaining points.

The judgment as to defendant-appellee Douglas Kain is affirmed. The judgment as to all other defendant-appellees is reversed, and judgment is here rendered that plaintiff-appellant have specific performance of the contract of sale as to each defendant-appellee except Douglas Kain, and that defendant-appellees, except Douglas Kain, forthwith execute the deed that has been heretofore presented to them by plaintiff-appellant, conditioned only upon the plaintiff paying to each their pro-rata part of the cash down payment and executing and delivering the several vendors' lien notes and the deed of trust to additionally secure the payment of the deferred consideration, all as particularly set out in the contract of sale.

Cost of this appeal are adjudged and taxed: twelve and one-half percent (12½%) plaintiff-appellant; eighty-seven and one-

half percent (87½%) to all defendant-appellees except Douglas Kain.

AFFIRMED IN PART AND REVERSED AND RENDERED IN PART.